IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**WILLARD EUGENE BAYS,**

   **Plaintiff,**

v.               Civil action no. 5:06cv103
                    (Judge Stamp)

**ET WENSELL, Personally and on behalf
of the Tygart Valley Regional Jail;
WYETTA FREDERICKS, Executive Director WV
Regional Jail and Correctional Facility;
DOCTOR CARL HOFFMAN, Agent of
Process for PrimeCare Medical of WV, Inc.;
JIM RUBENSTEIN, Commissioner of WV
Division of Corrections;
PRIMECARE MEDICAL OF WEST VIRGINIA, Inc.,**

   **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On August 8, 2006, the *pro se* plaintiff, Willard Eugene Bays, initiated this case by filing a complaint under 42 U.S.C. § 1983. On November 21, 2006, the undersigned conducted a preliminary review of the complaint and found that summary dismissal was not appropriate and directed the Clerk to issue a summons for each defendant. Summons were issued as to E.T. Wensell, Wyetta Fredericks, Carl Hoffman, and Jim Rubenstein on November 21, 2006.

On December 6, 2006, the defendant, Jim Rubenstein, filed an Answer as well as a Motion to Dismiss or for Summary Judgment. A Roseboro Notice was issued on December 7, 2006. On December 29, 2006, E.T. Wensell and Wyetta Fredericks filed a Motion to Dismiss. On January 4, 2006, a Roseboro Notice was issued. On January 8, 2007, a Motion to Dismiss Complaint and

Alternative Motion for Summary Judgment was filed by the defendants, Primecare Medical of West Virginia, Inc. and Carl Hoffman. A third Roseboro Notice was issued on January 9, 2007. On February 16, 2007, the plaintiff filed a response opposing the Motion or Motions to Dismiss, or in the alternative, Motions for Summary Judgment.

## II. The Pleadings

### A. The Complaint

In his complaint, the plaintiff asserted that the defendants have refused to provide him treatment and care to alleviate a painful condition involving his right knee. With his complaint, the plaintiff provided evidence that showed he was scheduled to have arthroscopic ACL reconstructive surgery on September 15, 2004. However, before the surgery could be performed, the plaintiff was sentenced to the custody of the West Virginia Division of Corrections ("WVDOC").[1] Due to overcrowding in the WVDOC, at the time the plaintiff filed his complaint, he was still being held at the Tygart Valley Regional Jail ("TVRJ").[2] The plaintiff further asserted that neither the TVRJ, nor the WVDOC would provide him with adequate treatment for his knee condition. The plaintiff further asserted that he suffered from great pain from this condition that reasonably could have been remedied. As relief, the plaintiff sought an order for treatment with an orthopedic surgeon, including medical examination, testing and reconstructive knee surgery. In addition, the plaintiff asked for any and all other relief the court deemed appropriate, including court costs and filing fees.

### B. The Defendants' Motions

---

[1] The plaintiff was remanded to the custody of the Western Regional Jail on September 16, 2004. (Dckt. 21-3). His surgery was scheduled for September 15, 2004, but was postponed because he had recently fallen and had multiple abrasions to the lower leg with infection and swelling. (Dckt. 1, Exb. A).

[2] On December 7, 2006, the plaintiff was transferred from the TVRJ to Mount Olive Correctional Center, a Department of Corrections facility. (Dckt. 21-3).

2

**Jim Rubenstein**

In his Motion to Dismiss, Commissioner Rubenstein asserts that prospective relief is not proper. Mr. Rubenstein elaborates that prospective relief is all relief other then compensatory monetary damages. Mr. Rubenstein acknowledges that the WVDOC lacks sufficient resources to receive all inmates sentenced to its custody. Without conceding that the plaintiff has suffered any constitutional violation, Commission Rubenstein notes that the WVDOC has opted to have the plaintiff ordered to the Mount Olive Correctional Complex for medical reasons. Because it is uncertain that the medical staff at the MOCC will conclude that the plaintiff requires reconstructive knee surgery, Commissioner Rubenstein argues that he should be dismissed from this case as any additional relief, such as order for specific medical treatment, would be prospective.

**E.T. Wensell, Administrator, TVRJ and Wynetta Fredericks, Executive Director WV Regional Jail and Correctional Facility**

In their Motion to Dismiss, or in the alternative, Motion for Summary Judgment, these defendants assert the following:

1. Plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1197(e);

2. Plaintiff's claims are barred by the doctrines of qualified or official immunity;

3. Plaintiff's claims are barred by the Will Doctrine and the 11th Amendment to the United States Constitution;

4. Plaintiff is no longer in custody of the TVRJ, as such his claims for equitable relief are now moot.

**PrimeCare Medical of West Virginia, Inc. and Dr Carl Hoffman**

In their Motion to Dismiss, or in the alternative, Motion for Summary Judgment, these defendants

assert the following:

1. Plaintiff has not set forth any specific allegations of wrongdoing, improper acts, failures to act, or other conduct on the part of any agents, contractors, or employees of PrimeCare which constitute deliberate indifference to the plaintiff's serious medical needs.

2. Plaintiff has not set forth any specific allegations of wrongdoing, improper acts, failures to act, or other conduct on the part of Carl A. Hoffman, Jr., D.O. which constitute deliberate indifference to the plaintiff's serious medical needs.

3. The Affidavit of Deann L. Hedrick, R.N., CCHP, and the medical records attached as exhibits thereto, demonstrate that the plaintiff's medical and/or orthopedic needs were appropriately addressed by these defendants.

### III. Standard of Review

**A. Motion to Dismiss**

In ruling on a motion to dismiss the Court must accept as true all well-pleaded factual allegations. Walker v. True, 399 F.3d 315 (4th Cir. 2005). Furthermore, dismissal for failure to state a claim is properly granted where, assuming the facts alleged in the complaint to be true, and construing the allegations in the light most favorable to the plaintiff, it is clear, as a matter of law, that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41, 4506 (1957). Additionally, a district court should construe *pro se* petitions liberally. See Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (emphasizing the liberal construction rule for *pro se* complaints raising civil rights issues).

**B. Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is

4

appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only

5

"[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita at 587 (citation omitted).

### IV. Analysis

#### A. TVRJ, PrimeCare Medical of West Virginia, Inc.,

In the complaint, plaintiff names the TVRJ and PrimeCare Medical as defendants. However, neither of these entities is a person for purposes of 42 U.S.C. § 1983. See Brooks v. Pembroke City Jail, 722 F.Supp. 1294, 1301 (E.D.N.C. 1989) (Claims under § 1983 are directed at persons); see also Will v. Michigan Dept. Of State Police, 491 U.S. 58, 71 (1989) ("Neither a State nor its officials acting in their official capacities are 'persons' under § 1983"); Preval v. Reno, 203 F.3d 821 (4th Cir. 2000) (unpublished) )"[T]he Piedmont Regional Jail is not a 'person,' and is therefore not amenable to suit under § 42 U.S.C. 1983"); Roach v. Burch, 825 F.Supp. 116 (N.D.W.Va. 1993) (The West Virginia Regional Jail Authority is "in effect the State of West Virginia" and is not a person under § 1983). Accordingly, the TVRJ and Primecare Medical are not proper parties to this action and should be dismissed.

#### B. E.T. Wensell and Wyetta Fredericks

In their Motion to Dismiss, or in the alternative, Motion for Summary Judgment, these defendants allege that the plaintiff has failed to exhaust his administrative remedies. More specifically, they allege that the plaintiff failed to exhaust his administrative remedies by appealing the Level II decision to the its final Level III.

Under the PLRA, a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). The exhaustion of administrative remedies "applies to all inmate suits about prison

life, whether they involve general circumstances or particular episodes,"[3] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior* to filing a complaint in federal court. Porter v. Nussle, 534 U.S. 516, 524 (*citing* Booth, 532 U.S. at 741)(emphasis added). Moreover, an inmate may procedurally default his claims by failing to follow the proper procedures. See Woodford v. Ngo, ___ U.S. ___, 126 S.Ct. 2378 (2006)(recognizing the PLRA provisions contain a procedural default component).

The West Virginia Regional Jail and Correctional Facility Authority provides all inmates with an administrative grievance procedure by which complaints concerning the conditions of confinement may be addressed. The grievance process begins when the inmate completes an inmate grievance form and submits that form to the Administrator of the facility. The Administrator will review the grievance, and, if warranted, investigate the complaint and promptly provide the inmate with a written decision. That decision will identify any corrective action taken in response to the grievance and/or the reasons the grievance is denied. An inmate who is dissatisfied with the Administrator's response may appeal that decision to the Chief of Operations. The Chief of Operations reviews the grievance, and the response from the Administrator, and issues a written decision identifying any corrective action taken or the reasons for denying the appeal. If the inmate is dissatisfied with the response from the Chief of operations, he takes a final appeal to the Office of the Executive Director. Plaintiff must complete all three levels of the process to successfully exhaust his administrative remedies.

In this particular case, the plaintiff clearly filed his Level I grievance with E.T. Wensell, the administrator of the TVRJ. His Level 1 grievance was filed on August 7, 2006. The response neither

---

[3] Id.

approved nor disapproved the grievance, but rather indicated that it was referred to medical.[4] Although it appears undisputed that the plaintiff appealed to Level II, neither the plaintiff nor the defendants have supplied the court with a copy of the same. In his complaint, the plaintiff indicates that he had not received a response to his Level II grievance to the Chief of Operations.

From the information provided by the plaintiff and the defendants, it is not clear whether the plaintiff ever received a response to his Level II grievance, or simply had not received one by the time he filed his complaint in this matter. Clearly, if the latter were true, the plaintiff would have filed his complaint prematurely, and it would be subject to dismissal for failure to exhaust administrative remedies. However, even if the Chief of Operations did not respond to the plaintiff's Level II grievance, thus waiving the exhaustion requirements, the plaintiff's complaint as it relates to E.T. Wensell and Wyetta Fredericks fails to state a claim upon which relief can be granted, and these defendants are also due to be dismissed.

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, "[a] pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the grounds upon which the court's jurisdiction depends..(2) a short and plain statement of the claim *showing that the pleader is entitled to relief*, and (3) a demand for judgment for the relief the pleader seeks." (Emphasis added). "And, although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by the plaintiff that he has a valid claim of some type against defendant." Migdal v. Roweice-Fleming International, Inc., 248 F.3d 321, 326 (4th Cir. 2001)(citation and internal quotations omitted). Furthermore, in order to establish personal liability against a defendant in a § 1983 action, the defendant

---

[4] The response is not dated but indicates that Mr. Wensell was going to ask the DOC to take the plaintiff to their facility and provide him the necessary medical treatment.

8

must be personally involved in the alleged wrong(s); liability cannot be predicated solely under *respondeat superior*. See Monell v. Department of Social Services, 426 U.S. 658 (1978); see also Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1997).

In the instant case, plaintiff makes no specific allegations of a violation of any constitutional right against defendants Wensell and Fredericks. Instead, it now appears that plaintiff merely named Mr. Wensell in his official capacity as the Administrator of the TVRJ and Ms. Fredericks as the Executive Director of the West Virginia Regional Jail and Correctional Facility Authority. However, official capacity claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citation and quotation omitted). Therefore, suits against state officials in their official capacities should be treated as suits against the state. Id. at 166. In order for the governmental entity to be a proper party of interest, the entity's policy or custom must have played a part in the violation. Id. (citing Monell, supra at 694).

Here, plaintiff fails to assert that a policy or custom of the entity played a part in the alleged violation of his constitutional rights. Accordingly, plaintiff cannot maintain his claim against Administrator Wensell or Executive Director Fredericks.[5]

## C. Dr. Carl A Hoffman

The essence of the plaintiff's complaint is that while he was housed at the TVRJ, the "defendants" were deliberately indifferent to his knee condition and failed to provide him adequate medical care for that condition. Therefore, the plaintiff is alleging a claim under the Eighth Amendment to the United States Constitution.

---

[5] For the same reasons, Jim Rubenstein must also be dismissed as a defendant, as it is clear that he has been named solely in his official capacity as Commissioner of the Department of Corrections.

To state a claim under the Eighth Amendment, plaintiff must show that defendants acted with deliberate indifference to serious medical needs of a prisoner. Estelle v. Gamble, 429 U.S. 97, 104 (1976). A cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between the inmate and a physician over the inmate's proper medical care, unless exceptional circumstances are alleged. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

To succeed on an Eighth Amendment "cruel and unusual punishment" claim, a prisoner must prove two elements: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 298 (1991). When dealing with claims of inadequate medical attention, the objective component is satisfied by a serious medical condition.

A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir.1990), *cert. denied*, 500 U.S. 956 (1991); Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir.1987) *cert. denied,* 486 U.S. 1006 (1988).[6]

A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss. Monmouth 834 F.2d at 347. Thus, while failure to provide recommended elective knee

---

[6] The following are examples of what does or does not constitute a serious injury. A rotator cuff injury is not a serious medical condition. Webb v. Prison Health Services, 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. Veloz v. New York, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999). Conversely, a broken jaw is a serious medical condition. Brice v. Virginia Beach Correctional Center, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition. Browning v. Snead, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities. Finley v. Trent, 955 F. Supp. 642 (N.D. W.Va. 1997).

surgery does not violate the Eighth Amendment, Green v. Manning, 692 F.Supp. 283 (S.D. Ala.1987), failure to perform elective surgery on an inmate serving a life sentence would result in permanent denial of medical treatment and would render the inmate's condition irreparable, thus violating the Eighth Amendment. Derrickson v. Keve, 390 F.Supp. 905,907 (D.Del.1975). Further, prison officials must provide reasonably prompt access to elective surgery. West v. Keve, 541 F. Supp. 534 (D. Del. 1982) (Court found that unreasonable delay occurred when surgery was recommended in October 1974 but did not occur until March 11, 1996.)

The subjective component of a "cruel and unusual punishment" claim is satisfied by showing deliberate indifference by prison officials. Wilson, 501 U.S. at 303. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." Id. at 844.

Even if this court were to assume that the plaintiff herein suffers from a serious medical need or condition, the medical records establish that he has received thorough and timely medical treatment during his incarceration at the TVRJ. Therefore, the plaintiff's Eighth Amendment rights clearly have not been violated.

The plaintiff arrived at TVRJ on April 30, 2006. (Dckt. 21-3). An medical screening was done that same date. The plaintiff reported a history of hypertension, seizures, and depression. No mention was made of any problems with his knee. (Dckt. 35-2).

On May 8, 2006, the plaintiff was seen in the Cardiovascular Clinic at the TVRJ with

complaints of back pain. Andrew Howlett, PA-C, a physician's assistant employed by PrimeCare ordered that Motrin, which the plaintiff had been taking for his back complaints be discontinued in favor of Nalfon, which is easier on the stomach. The plaintiff was given a thirty day prescription of Nalfon, 600 mg. to be taken twice a day. (Dckt. 35, pp. 2-3).

On June 16, 2006, the plaintiff submitted an Inmate Sick Call Non-Emergency Request form asking to be seen for a sore throat, right knee pain, and irritation under his arms due to deodorant use. A nurse saw the plaintiff on June 17, 2006, and noted that the plaintiff reported that Nalfon helped his knee. The plaintiff was given chloraseptic spray for his throat and was put on the list to see a physician or physician's assistant. (Dckts. 35, p.3 & 35-4).

On June 19, 2006, the plaintiff was seen in the medical unit at TVRJ by Andrew Howlett, PA-C. During that examination, a physical assessment was done of the plaintiff's right knee by performing anterior and posterior drawer maneuvers on the knee, which revealed the knee to be intact with no effusion at the ligaments. The plaintiff was prescribed Motrin twice a day for 14 days and advised to rest as needed. (Dckts. 35, p.3 & 35-5).

On June 28, 2006, th plaintiff submitted an Inmate Sick Call Non-Emergency Request form asking again to be seen for right pain which still hurt him "severely bad." The request was received by a nurse in the TVRJ medical unit on June 29, 2006. On June 30, 2006, Cindy Lanham R.N. evaluated the plaintiff. Although the plaintiff was complaining of pain at the front and back of his right knee, no swelling or redness was noted. He was put on a list to be seen by the physician or physician's assistant.
In addition, verbal orders were given by the physician to put the plaintiff on Nalfon 600 mg., twice a day for seven days for his knee pain. (Dckt. 35-6).

On July 8, 2006, the plaintiff submitted an Inmate Sick Call Non-Emergency Request form

asking to be seen for his right knee which continued to "hurt bad." He also again complained about deodorant causing him irritation. The request was received by the nurse that same day, and the plaintiff was seen the next day by a nurse, who put him on the list to be seen by a physician or physician's assistant. (Dckts. 35, p. 4 & 35-7).

On July 10, 2006, the plaintiff was seen in the medical unit of the TVRJ by Andrew Howlett, PA-C for complaints of right knee pain. Mr. Howlett performed both anterior and posterior drawer movements which revealed the plaintiff's knee was intact. The plaintiff had full range of motion of the knee. Physical examination revealed no crepitus, tenderness of the knee, or effusion of the knee joint. The plaintiff walked with a normal gait, and there was no unusual warmth or redness of the knee. Mr. Howlett ordered that the plaintiff be given Nalfon 600 mg., twice a day for ninety days. He also ordered that the plaintiff's knee be wrapped in an ace bandage every day for ninety days. (Dckt. 35-8).

On August 15, 2006, the plaintiff was seen by Jerry Hahn, M.D. in follow-up to his earlier complaints of right knee pain. The plaintiff reported that his knee pain was slowly improving. Dr. Hahn found some evidence of crepitus in the knee, but there was no swelling. His assessment was that the plaintiff was experiencing right knee pain following an ACL injury. Dr. Hahn ordered that the plaintiff continue Nalfon twice a day. (Dckt. 35, p. 6 & 35-8).

From August 15, 2006, until he plaintiff's transfer to the DOC's custody at Mount Olive, the medical records are devoid of any further complaints by the plaintiff of knee pain. However, the plaintiff was seen on October 22, 2006 for a three inch laceration above his left eye and complaints of pain in his right shoulder after falling. That same day, the plaintiff was sent to the emergency department at Davis Memorial Hospital. His laceration was sutured, and it was determined that he had sustained a fracture of the right proximal humerus. An open reduction and internal fixation of the fracture was performed on October 25, 2006. Except for an overnight stay at Davis Memorial Hospital

following surgery, the plaintiff remained in the medical unit at TVRJ from October 22, 2006 until November 23, 2006, when he returned to the general population. On December 4, 2006, the plaintiff met with Elaine Price, D.O., who provided him with instructions and handouts concerning self-physical therapy for his right arm and shoulder. (Dckt 35, pp. 6-7). On December 7, 2006, the plaintiff was transferred to Mt. Olive.

As this medical history clearly demonstrates, the plaintiff did not complain about his knee from the time he arrived at TVRJ on April 30, 2006 until June 16, 2006. During the two months from June 16, 2006 until August 15, 2006, the plaintiff made approximately four complaints to the medical personnel at the TVRJ. Each time, he was seen in a timely manner and prescribed appropriate pain medication. Additionally, the plaintiff made no further complaints regarding his knee prior to his transfer to Mount Olive. The fact that the plaintiff was not afforded ACL reconstruction while at the TVRJ, does not, in and of itself, evidence the type of deliberate indifference that would demonstrate the subjective component of a cruel and unusual punishment claim. Accordingly, the plaintiff has failed to state a claim against any individual medical personnel for which relief can be granted.[7]

## V. RECOMMENDATION

In consideration of the foregoing, it is the undersigned's recommendation that the Motions to Dismiss and or for Summary Judgment (Dcks. 15, 21, 25) be **GRANTED**, and the plaintiff's complaint (Dckt 1.) be **DENIED** and **DISMISSED** with prejudice.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be

---

[7]Dr. Carl Hoffman, the only individual medical personnel named in the complaint, appears to have had no contact whatsoever with the plaintiff. Rather, the plaintiff merely named him as the "agent of Process for PrimeCare Medical of West Virginia." (Dckt. 1, p 2)

submitted to the Honorable Frederick P. Stamp, Jr., United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985);  <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984).

     The Clerk of the Court is directed to provide a copy of this Report and Recommendation to the *pro se* plaintiff and any counsel of record as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

Dated: July 19, 2007

                                                 <u>/s/ James E. Seibert</u>
                                                 JAMES E. SEIBERT
                                                 UNITED STATES MAGISTRATE JUDGE